UNITED STATES of America

v.

Schuessler WATTS, Jr., Appellant.

No. 75–1009.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 16, 1976.

Decided June 22, 1976.

**1094**

Allan M. Palmer, Washington, D. C., for appellant. John W. King, Washington, D. C., also entered an appearance for appellant.

Daniel A. DeRose, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Jason D. Kogan, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before LEVENTHAL and WILKEY, Circuit Judges, and BRYAN,* United States District Judge for the Eastern District of Virginia.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

LEVENTHAL, Circuit Judge:

This is an appeal from a conviction for possession of narcotics with intent to distribute, 21 U.S.C. § 841. Appellant was sentenced to a term of five years' imprisonment, plus a special parole term of three years to be served at the expiration of the five-year sentence. Execution of the sentence was suspended, and appellant was placed on five years' probation with conditions. Appellant complains of the District Judge's denial of his motion to suppress narcotics seized in his home pursuant to a search warrant, on the ground that the warrant issued without a showing of probable cause sufficient under *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and its progeny.

## I. BACKGROUND

The pertinent facts are as follows. On February 11, 1974, Officers Johnson and Cassidy, with several other members of the Narcotics Squad of the Metropolitan Police Department, went to the defendant's home, 2502 Pomeroy Road, S.E., Apartment 404, Washington, D.C., for the purpose of executing a bench warrant for the arrest of one Robert Wilkinson. Wilkinson was not there, but while some of the officers were engaged in a conversation with the occupant, Tommy L. Bowers, Officer Cassidy noticed an I.B.M. Selectric Typewriter on the living room table. On the assumption that such machines were generally leased to commercial establishments and not generally found in the home, Cassidy moved the carriage return to expose the serial number. He made a note of the number, and a subsequent check revealed the typewriter had been stolen. Cassidy also observed two small smoking pipes which he believed were "commonly used for the smoking of Marijuana."

Three days later, on February 14, 1974, at approximately 6:30 to 7:00 A.M., Officer Johnson received a telephone call from an informant who stated that he had been in the company of Watts at the Pomeroy Road apartment within the past twelve hours and had been shown a quantity of powder alleged by Watts to be heroin and cocaine, and that these narcotics would be transferred sometime during the day of February 14, 1974. Johnson relayed the informant's tip in a telephone call to Cassidy, who later that morning applied for and received a United States Magistrate's search warrant for the apartment. At approximately 12:15

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d)

P.M. that day, Officers Johnson and Cassidy and others executed the search warrant and seized the items which were the subject of the motion to suppress.

## II. THE SHOWING OF PROBABLE CAUSE BEFORE THE MAGISTRATE

### A. *The Cassidy Affidavit*

Officer Cassidy's affidavit upon which the search warrant issued is set out in the Appendix. Essentially, the following recitals were made to establish probable cause: (1) the observation of serial number 5583096 from the I.B.M. Selectric which checked out as a stolen typewriter; (2) the observation of two small pipes "commonly used for the smoking of Marijuana"; (3) the informant's tip that he had seen narcotics in Pomeroy Road apartment within the past twelve hours and that they were to be moved sometime during the day of February 14, 1974; and (4) the past reliability of the informant, in that (a) he "has supplied information in the past to members of the Narcotics Branch, M.P.D.C. concerning Narcotic violators operationg (sic) withinf (sic) the District of Columbia; (b) "[t]his information has proven to be correct in the past and as a result of the information given by this source, arrests are pending of at least on (sic) narcotic violator"; and (c) "this source has in the past two weeks has (sic) purchased illicit narcotics drugs for members of the M.P.D.C. under controlled conditions."

■ The warrant in this case authorized a search of the Pomeroy Road premises "for violations of the Narcotics Laws of the United States and the District of Columbia."[1] Because appellant was prosecuted for a narcotics offense, and seeks to suppress the narcotics seized from his home pursuant to the warrant, we do not have occasion here to rule on appellant's contention that Officer Cassidy's previous observation of the I.B.M. Selectric typewriter serial number by moving the carriage return of the machine (Tr. 20) was improper under the "plain view" doctrine of *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The issue before us is whether the Cassidy affidavit established probable cause to believe that narcotics and related paraphernalia would be found in the Pomeroy Road premises.[2]

### B. *The Aguilar Requirements*

Under *Aguilar v. Texas, supra,* 378 U.S. at 114, 84 S.Ct. at 1514, to provide probable cause for a warrant an affidavit based on hearsay information must inform the magistrate of "some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were . . . ." That requirement was concededly met by Cassidy's affidavit which related that the tip was based on the first-hand observations of the informant, obtained in the presence of the appellant. The issue in this case is whether there was an adequate showing before the magistrate as to the second prong of *Aguilar,* that the affidavit must show "some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.'"

■ We take as our starting point that a magistrate's "determination of probable

1. Specifically 21 U.S.C. § 841(a); 33 D.C. Code § 402. Although the Cassidy affidavit sought a search warrant for "interstate transportation of stolen goods," as well as the narcotics offenses, the warrant that issued referred to narcotics only.

2. We see no substantial basis to speculate that the recital as to the stolen typewriter, even if the knowledge were held to be illegally obtained, may have tainted the magistrate's probable cause finding as to the narcotics. Given the particularity requirement of the Fourth Amendment, the typewriter recital should have had no bearing on the issuance of a search warrant relating to a narcotics offense.

Moreover, even where a "tainted" recital relates to the very offense for which the warrant issues, the rule in this circuit is "[w]hen an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information considered by itself *establishes probable cause* for the warrant to issue." *James v. United States,* 135 U.S.App.D.C. 314, 315, 418 F.2d 1150, 1151 (1969).

cause should be paid great deference by reviewing courts," *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637 (1969), that "when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,'" *Aguilar v. Texas, supra,* 378 U.S. at 111, 84 S.Ct. at 1512, *quoting Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). While the court must review the adequacy of the affidavit in terms of the *Aguilar* requirements,[3] a layman-prepared affidavit, often prepared under the pressure of time, should be read in a "common-sense and realistic fashion" with due deference accorded to the magistrate's appraisal.[4]

### C. Application of Law to Facts

■ The affidavit includes a recital that on its face is probative of the informant's past reliability. It states that the informant has been reliable in the past to members of the Narcotics Branch of the Metropolitan Police, and offers "some of the underlying circumstances" for that judgment. They are that this informant has supplied information concerning narcotics violators operating within the District of Columbia, and this information had proven to be correct in the past. We are aware that this recital can be given a reading so exacting in syntax as to negate what was the likely intent of the affiant, and even more likely the magistrate's understanding. In our view, the message intended, and understood, was that the informant's previous tips had been helpful to the police because they had proven correct.[5] Our responsibili-

---

**3.** We are aware that the Supreme Court has heard argument on a petition raising the claim, among others, that evidence seized pursuant to a warrant issued on a good faith application of the police is admissible in state criminal trials, regardless of the absence of probable cause. *Rice v. Wolff,* 513 F.2d 1280 (8th Cir.), *cert. granted,* 422 U.S. 1055, 95 S.Ct. 2677, 45 L.Ed.2d 707 (1975), *argued,* 44 U.S.L.W. 3490 (U.S. February 24, 1976). We note that petitioner there raises the independent claim that federal habeas corpus should not extend to Fourth Amendment violations by state and local officers where there is an adequate state remedy and no colorable claim of innocence, and indeed characterized his first point on limiting the scope of the exclusionary rule as "a fallback argument." 44 U.S.L.W. 3485. In the order granting certiorari, the Court requested the parties to brief and argue the habeas corpus issue, which had not been raised in the petition. 422 U.S. at 1055–56, 95 S.Ct. at 2677.

**4.** *See United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965): Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable

cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

**5.** The recital states that the information supplied by the informant has proven to be correct in the past "and as a result of this information given by this source, arrests are pending of at least on (sic) narcotic violator." We read this as containing two *independent* assertions: (1) previous information supplied by the informant had proven correct; and (2) this information had borne fruit in the case of one "pending" arrest. While we find the former probative of the informant's past reliability, we do not rely on the latter because of the facial ambiguity of an arrest being "pending." Officer Johnson testified at the hearing on the motion to suppress that the only arrest involved was an "anticipated" one, that of defendant Watts for possession of the narcotics here sought to be suppressed (Tr. 56–58).

In our opinion this ambiguity in the Cassidy affidavit was not fatal to the showing of probable cause. "In reaching this conclusion we assume without deciding that a court may examine the underlying evidence when an affidavit establishes probable cause on its face." *United States v. James,* 161 U.S.App.D.C. 88, 97, 494 F.2d 1007, 1016 *cert. denied,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). We thus do not decide whether the factual sufficiency of a warrant may be impeached by extrinsic evidence, a question left open in *Rugendorf v. United States,* 376 U.S. 528, 532, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); *United States v. Thornton,* 147 U.S.App.D.C. 114, 123–24, 454

ty under the pertinent Supreme Court decisions is to give the affidavit a sensible, pragmatic reading, one that takes account of the pressure of time and the typical level of verbal skills in laymen police officers, and accords deference to the magistrate's determination, which may be based on demeanor evidence, to credit the affiant's assertions.

This recital could have been more detailed, and indeed it might have been had Officer Johnson, who had received the informant's phone call, been available to secure the warrant himself.[6] The circumstances of the case were such that Johnson was "on sick leave" (Tr. 40) when the informant called between 6:30 and 7:00 A.M. on February 14, and said that narcotics were to be moved that day from the Pomeroy Road apartment. Johnson called Cassidy and relayed to him the contents of the tip and his basis for crediting the informant. Cassidy then prepared the affidavit, and the warrant was issued that morning and executed by noon.[7]

■ Putting to one side the special circumstances of this case, the recital in question could properly be relied upon by the magistrate in finding probable cause. Factual delineation of the situations in which previous information obtained from the informant had proven correct, however desirable in aiding the magistrate's independent scrutiny, is simply not required by the Supreme Court decisions. Although a bare recital that an unnamed defendant is "credible"[8] or "reliable"[9] or "prudent,"[10] without offering any factual basis for that conclusion, is plainly inadequate, the assertion that the source had previously given correct information concerning narcotics violators is entitled to weight as a factor establishing previous reliability. The affidavit in *Jones v. United States,* 362 U.S. 257, 267 n. 2, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), contained a similar recital, and the *Jones* affidavit has been cited by the Court in subsequent decisions as a "suitable benchmark" for judging "what quantum of information is necessary to support a belief that an unidentified informant's information is truthful."[11]

Most lower courts have followed the example of *Jones* in permitting magistrate reliance on a recital that the informant had previously given correct information, without requiring further factual elaboration of past reliability.[12]

F.2d 957, 996–97 (1971). *See generally North Carolina v. Wrenn,* 417 U.S. 973, 94 S.Ct. 3180, 41 L.Ed.2d 1144 (1974) (White, J., joined by Burger, C. J., dissenting from denial of certiorari); Herman, *Warrants for Arrest or Search: Impeaching the Allegations of a Facially Sufficient Warrant,* 36 Ohio St.L.J. 721 (1975); Note, *The United States Courts of Appeals: 1974–1975 Term Criminal Law and Procedure,* 64 Georgetown L.J. 173, 195–96 (1975).

6. Johnson testified at the suppression hearing that previous information from the informant "concerning the activities of Mr. Watts and the relationship of Mr. Watts and Mr. Wilkinson" had proven correct (Tr. 77).

7. Cassidy testified that Johnson "returned from sick leave about eleven o'clock that morning" and participated in the execution of the warrant at noon (Tr. 40).

8. *Aguilar v. Texas,* 378 U.S. 108, 109, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

9. *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

10. *United States v. Harris,* 403 U.S. 573, 579, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

11. *Id.* at 580, 91 S.Ct. at 2080; *Aguilar v. Texas, supra* note 8, 378 U.S. at 114 & n. 5, 84 S.Ct. 1509.

12. *See, e. g., United States v. Ross,* 424 F.2d 1016, 1018–19 (4th Cir.), *cert. denied,* 400 U.S. 819, 91 S.Ct. 35, 27 L.Ed.2d 46 (1970) (source known to be reliable because he "furnished correct information concerning" two thefts of motor vehicles which had been transported in interstate commerce); *United States v. Vigo,* 413 F.2d 691, 692 (5th Cir. 1969) (informant "has proven to be reliable in the past on several occasions in his utilization as an informant for the Federal Bureau of Narcotics"); *United States v. Hood,* 422 F.2d 737, 739 (7th Cir.), *cert. denied,* 400 U.S. 820, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970) (informant had "on various occasions in the past furnished information leading to the recovery of similar type of stolen property," and his story was partially corroborated by two additional informants "believed to be reliable"); *United States v. Dunnings,* 425 F.2d 836, 839 (2d Cir. 1969) (Friendly, J.), *cert. denied,* 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (informant had "furnished reliable and accurate information on approximately 20 occasions over the past four years"); *United States v. Perry,* 380 F.2d 356, 357 (2d Cir.), *cert. de-*

■ Of course, such a recital, standing alone, may not be enough. In *Jones* the informant's tip, reciting that he had purchased narcotics from defendant in his apartment, was corroborated by "other sources," albeit unnamed and their previous reliability unmentioned; [13] and the suspects were known to the police as narcotics users. Justice Frankfurter concluded that "there was substantial basis for [the magistrate] to conclude that narcotics were probably present in the apartment, and that is sufficient." 362 U.S. at 271, 80 S.Ct. at 736.

■ Here we have neither corroboration by independent sources, nor significant police knowledge of the suspect's reputation as a narcotics user or distributor.[14] Rather, the additional factor establishing probable cause in this case is contained in the recital that "this source has in the past two weeks purchased illicit narcotic drugs for members of the M.P.D.C. under controlled conditions." While an individual's successful participation in controlled "buys" might not in and of itself conclusively establish previous reliability as an informant, it does seem to flesh out the previous recital that the informant was not a mere purveyor of rumor and gossip. It is certainly material as indicating that the informant was not a "stranger" to the police but one willing to place himself in a working situation with the police, and subject himself to their controls, giving them an opportunity to appraise his reliability.[15] When such an informant relates that he has seen narcotics in the Watts apartment the night before and that the drugs will be transferred sometime that day, as in *Jones* "the chances of a reckless or prevaricating tale" are significantly reduced, such that there is a "substantial basis" for the magistrate "to conclude that narcotics were probably present in the apartment, and that is sufficient." [16]

The District Court's denial of appellant's motion to suppress is

*Affirmed.*

---

*nied,* 389 U.S. 943, 88 S.Ct. 307, 19 L.Ed.2d 299 (1967) (source "has given information to [affiant] on several previous occasions and on each occasion that information was correct to my own personal knowledge"); *United States v. Ramos,* 380 F.2d 717, 719 (2d Cir. 1967) ("reliable informant who has provided information on at least 100 prior occasions over the past year and a half, which information has proven extremely reliable and accurate").

**13.** *See also Rugendorf v. United States,* 376 U.S. 528, 530–31, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964).

**14.** During their February 11, 1974 visit to the Watts home, Officers Johnson and Cassidy observed two small pipes which they believed were "commonly used for the smoking of Marijuana." Although the apparent violation of one drug law is probative, in some minimal fashion, of assertions that other drug violations may be afoot, this is not of the same probative weight as the suspects' admission of narcotics use and display of needle marks to the police in *Jones,* or the prior seizure of "a sizeable stash of illicit whiskey in an abandoned house under [the suspect's] control" in *United States v. Harris, supra* note 10, 403 U.S. at 575, 91 S.Ct. at 2078.

**15.** *See, e. g., United States v. James,* 147 U.S. App.D.C. 43, 45 & n. 1, 452 F.2d 1375, 1377 & n. 1 (1971).

*See also United States v. Carter,* 162 U.S. App.D.C. 132, 134, 498 F.2d 83, 85 (1974), where this court found the past reliability prong of *Aguilar* satisfied because the informant had a motive to cooperate with the police, having been arrested the day before for petty larceny, and gave additional information regarding the suspect's movements, and the police were able to independently corroborate the suspect's description prior to arrest.

**16.** Justice Harlan, dissenting in *United States v. Harris, supra* note 10, 403 U.S. at 592–93, 91 S.Ct. at 2086, would find a tip based on the personal observations of an informant having a working relationship with the police probative of the informant's credibility. "For example, to the extent that the informant is somehow responsible to the affiant, the fact of asserted personal observation might be of some value to a magistrate in assessing the informer's credibility. In such circumstances, perhaps a magistrate could conclude that where the confident claimed to speak from personal knowledge it is somewhat less likely that the informant was falsifying his report because, if the search yields no fruit, when called to account he would be unable to explain this away by impugning the veracity or reliability of his sources." However, *Harris* involved a first-time informer, and Justice Harlan concluded "no such relationship is revealed in this case."

## APPENDIX

AFFIDAVIT IN SUPPORT OF A UNITED STATES MAGISTRATES SEARCH WARRANT FOR THE ENTIRE PREMISES OF 2502 POMEROY ROAD, SOUTH EAST, WASHINGTON, D. C., APARTMENT NUMBER 404. PREMISES BEING OCCUPIED BY SCHUESSLER WATTS JUNIOR, DESCRIBED AS A MALE, NEGRO, D.O.B. 09–07–45, M.P.D.C. # 257–476, AND A FEMALE, NEGRO, KNOWN AS 'BILLIE WILLIAMS', NO FURTHER DESCRIPTION.

Mr. DONALD P. ZIEGLER, 1825 BILLMAN LANE, WHEATON, MARYLAND, reports to the Montgomery County Police, Rockville Station report number W–315–853, that the above address 1825 BILLMAN LANE, was entered between 4–20–73 and 4–23–73 and stolen were the following items:

One I.B.M. SELECTRIC TYPEWRITER SERIAL NUMBER 5583096. Five typeheads for the above typewriter. One ladies electric TIMEX BRAND watch with a black band. One ladies SPIEDEL BRAND, yellow metal in color.

On February 11, 1974, the affiant, alongwith (sic) Plc. K. G. Johnson, and other members of the Narcotic Branch, M.P.D.C., responded to 2502 Pomeroy Road South East, Washington, D. C., in order to affect the service of a Bench Warrant issued on February 5, 1974 by United States District Court Judge GESELL, for a Mr. Robert McNeil WILKINSON, who had failed to appear for sentencing after a conviction for Controlled Substance Act Violations. The Officers knocked on the door of the Pomeroy Road address, and after a short time the door was opened by a Mr. Tommy L. BOWERS, D.O.B. 10–06–48, who admitted the Officers inside. Once inside Plc. Johnson explained to Mr. BOWERS that there was an outstanding Bench Warrant for Mr. WILKINSON. Mr. Bowers stated that WILKINSON had been there earlier, but was no longer there. At this time Plc. Johnson asked to walk through the premises in order to ascertain that WILKINSON was not present, and Mr. BEWERS (sic)

consented. At this time the affiant observed on a small table in the living room area an I.B.M. SELECTRIC TYPEWRITER, and questioned Mr. BOWERS as to his knowledge of the ownership of same. Mr. BOWERS stated that it belonged to a Miss BILLIE WILLIAMS with whom he was staying for a few days. The affiant having experienced in the past that typewriters such as this were frequently stolen, and further were usually leased from the I.B.M. company rather than purchased by private individuals for home use, obtained the serial number 5583096 from the above described typewriter, and submitted the number through the N.C.I.C. system in an attempt to ascertain if it was stolen. This check of the N.C.I.C. Files was unable to be completed, due to the fact that the service was not available. Further Plc. Cassidy observed two small smoking pipes on a coffee table, pipes that are commonly used for the smoking of Marihuana. Upon attempting to check the serial number of the typewriter, and observing the pipes, Plc. Johnson returned to the area of the living room, and explained that WILKINSON was not there. At this time the Officers left the apartment.

On February 14, 1974, Sergeant Dean A. Hyde of the Narcotic Branch, M.P.D.C. resubmitted the serial number of the typewriter through N.C.I.C., and obtained a printout that this typewriter was in fact stolen from Montgomery County, Maryland. Sergeant Hyde then contacted the Montgomery County Police, and obtained the above information referance (sic) the circumstances of the theft.

On February 14, 1974, during the early morning hours, Plc. K. G. Johnson recieved (sic) information from a reliable source that it had met with the above described WATTS inside the Pomeroy Road address, within the past twelve hours prior to the application of this warrant, and while in the company of WATTS inside the apartment, was shown a quantity of powder, alleged by WATTS to be illicit narcotic drugs, to wit Heroin and Cocaine. This source has been reliable in the past in the fact that it has

supplied information in the past to members of the Narcotic Branch, M.P.D.C. concerning Narcotic violators operationg (sic) withinf (sic) the District of Columbia. This information has proven to be correct in the past and as a result of this information given by this source, arrests are pending of at least on (sic) narcotic violator. Further this source has in the past two weeks has (sic) purchased illicit narcotic drugs for members of the M.P.D.C. under controlled conditions. WATTS further stated to the source that the above described narcotics would be transferred from the Pomeroy Road address sometime during the day of February 14, 1974.

Based on the facts presented in the affidavit relative to the above described typewriter, and further the information supplied by the source relative to the powder shown by WATTS and described by WATTS himself-toto (sic) be narcotic drugs, and since WATTS had indicated to the source that these drugs will be transferred within a matter of hours from the apartment, the undersigned respectfully request that a United States Magistrates Search Warrant be issued for the premises of 2502 Pomeroy Road South East, Washington D. C., 404 for violations of the Narcotic Laws of the United States and the District of Columbia, for interstate transportation of stolen goods.

Plc. David E. Cassidy
Narcotic Branch, M.P.D.C.

SUBSCRIBED TO AND SWORN TO BEFORE ME THIS 14 DAY OF FEBRUARY, 1974.

UNITED STATES MAGISTRATE
UNITED STATES DISTRICT COURT
WASHINGTON, D. C.