Gordon P. METTS, Appellant,

v.

UNITED STATES, Appellee.

No. 11748.

District of Columbia Court of Appeals.

Argued Jan. 26, 1978.

Decided June 12, 1978.

---

**48**

John S. Stoppelman, Washington, D. C., appointed by the court, for appellant.

Reggie B. Walton, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, William J. Hardy, Jr. and Bette E. Uhrmacher, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and YEAGLEY and HARRIS, Associate Judges.

1. The jury was unable to reach verdicts on the other counts of the indictment which charged armed robbery, robbery, assault with a dangerous weapon, and carrying a pistol without a license. A mistrial was entered as to those charges. Later, those four counts were dismissed following appellant's plea of guilty to the lesser-included offense of attempted robbery.

HARRIS, Associate Judge:

Appellant was convicted by a jury of unlawful possession of a pistol.[1] D.C.Code 1973, § 22–3203. He contends that the pistol was seized impermissibly. Specifically, he asserts (1) that the affidavit filed by the government in support of its application for a search warrant failed to provide probable cause for the issuance of a warrant, and (2) that even if the affidavit was facially sufficient, it contained misrepresentations of fact which vitiated the search warrant issued pursuant to it. We affirm.

**I**

On February 28, 1975, Robert Walker Thomas was attacked by two armed men. Thomas struggled with his assailants, but they succeeded in absconding with his briefcase which contained $170,000 in cash. Detectives Stephen Kuty and Carmen V. Fontana were assigned to investigate the robbery. They were contacted by a third detective who had received a call from an unnamed informant concerning the robbery. Detective Fontana was invited to listen to a conversation between the informant and the third detective. The informant stated that he had overheard appellant Metts and another man (named James Reid) discussing a holdup of the Walker-Thomas furniture store. The informant thought that appellant "had gotten over big" because he suddenly seemed to have a lot of money.

Subsequently, the victim made a tentative identification of appellant from an array of nine photographs.[2] On March 4, 1975, Detective Fontana prepared an affidavit in support of an application for an arrest warrant. A warrant was obtained, and Metts was arrested later that day. Thereafter, the officers obtained a search

2. The victim indicated that he thought Metts was the man who had pulled a gun on him during the robbery, but that he could not be positive. Earlier that day, the informant had viewed the same array of photographs and identified those of appellant and Reid.

warrant, which led to the discovery of a pistol and over $19,000 in cash in appellant's bedroom.

## II

Appellant challenges the validity of the affidavit in support of the application for a search warrant. The affidavit reads in full:

(1) The complainant Robert Walker Thomas, owner of Walker Thomas Furniture Store, located 1031 7th st. NW, reports about 4:15 PM 2–28–75, after leaving his place of employment, he drove to his private parking lot, located in the rear of 1313 Potomac st. NW. As the complainant walked from his auto, and when alongside 1313 Potomac st. NW he was approached by 2 black male subjects. Subject # 1 produced a knife, and stated to the complainant "Give me the case". The complainant stated "No". The # 2 subject then produced a gun and placed same against the complaints head and stated "Give me the money." Mr. Thomas then began struggling with the subjects. The # 1 subject then grabbed the suitcase, and the subjects then fled. Subjects obtained $170,000 in the briefcase.

(2) On 3–3–75, information was received from a reliable source, who has proven reliable in the past, in closing numerous armed bank robbery offenses. The source stated that the subjects responsible for the above offense were Gordon Phillip Metts and James Louis Reid. The source further stated that he obtained this information through personal conversations with the above subjects.

(3) On 3–4–75 the complainant in the offense Robert Thomas viewed a series of black and white photographs. Included in the photographs were the photos of Gordon Metts and James

Louis Reid. The complainant at this time picked the photo of Gordon Metts and identified same as the person that robbed him on 2–28–75.

(4) On 3–4–75 a Superior Court warrant was issued for the above subjects Gordon Phillip Metts and James Louis Reid.

(5) On 3–5–75 uniform personal [*sic*] of the 3rd District, arrested one Gordon Phillip Metts, at # 311 Elm st. NW. The subject was advised of his rights and taken to the Robbery Branch Office. While in the Robbery Branch Office, the subject Metts was advised that a search warrant would be obtained for the address of 311 Elm st. NW. The subject Metts stated that there was money at that address. Further stated that he had hit the number on 2–27–75 for $30.00 which he placed as a bet. Mr. Metts further stated that the number was 757. A check with the MPDC Gambling squad showed that the number for 2–27–75 was 260.

(6) In view of the above facts it is respectfully requested that a Superior Court Search Warrant be issued for # 311 Elm st. NW which is a two story brick dwelling, from which the above mentioned defendant was arrested, and carries as a home address.

(7) The undersigned believes that the above mentioned property is located at 311 Elm st. NW and is likely to be removed from those premises at any time, as word of his arrest may become known to his co-conspirators at any time, as they are still at large. It is therefore respectfully requested that the search warrant be made executable at any hour of the day or night.[3]

Appellant contends that this affidavit failed to establish probable cause for a

---

**3.** The search warrant issued pursuant to this affidavit authorized a search of the premises at 311 Elm Street with the expectation that proceeds of the robbery would be found. Appellant concedes that if the validity of the warrant is upheld, the seizure of both the money and the pistol was proper. *See Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

search because (1) it did not set forth sufficient underlying circumstances from which the officer could conclude that the informant was credible, and (2) the additional allegations contained in the affidavit were insufficient to corroborate the informant's hearsay information.

■ In resolving this issue, we must bear in mind that in reviewing the issuance of a search warrant, appellate courts must grant great deference to the issuing judge's decision. *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Consequently, "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684 (1965). When an informant's tip is relied upon to establish probable cause, a two-pronged test is to be applied by a reviewing court.

> [T]he [issuing judge] must be informed of [1] some of the underlying circumstances from which the informant concluded that the [items to be searched for] were where he claimed they were, and [2] some of the underlying circumstances from which the officer concluded that the informant . . was "credible" or his information "reliable." [*Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964) (footnote omitted).]

Appellant concedes that the first prong of this test was satisfied, but contends that the second requirement was not met. The officer averred in his affidavit that "information was received from a reliable source, who has proven reliable in the past, in closing numerous armed bank robbery offenses."

■ We need not resolve the issue of whether that assertion was sufficient to satisfy the second prong of the *Aguilar* test, for even assuming that the informant's reliability was not adequately demonstrated, the tip was amply corroborated prior to the search by the detectives' investigation. *See Waldron v. United States,* D.C.App., 370 A.2d 1372, 1373 (1977); *Mitchell v. United States,* D.C.App., 368 A.2d 514, 516–17 (1977). Corroboration lies both in the vic-

tim's identification of appellant and in appellant's false explanation (*i. e.,* that he had won a numbers bet with a number which the officers knew not to have been the winner) to the police concerning the large amount of money which he admitted would be found in the house which was to be searched. These factors, strongly corroborating the veracity of the informant, lead us to conclude that the issuance of the warrant was based on probable cause.

### III

Appellant's second contention centers around four allegedly intentional misrepresentations of fact contained in the affidavit. Alternatively, appellant asserts that if the misrepresentations were not intentionally made, the officer nevertheless was culpably reckless. Appellant alleges that: (1) since Detective Fontana had not dealt personally with the informant, the statement that information was received from a "reliable source, who has proven reliable in the past in closing numerous armed bank robbery offenses" constituted a misrepresentation; (2) the informant did not implicate James Reid in the robbery; (3) the complaining witness did not positively identify appellant as one of the robbers but made only a tentative identification of him; and (4) Detective Fontana listed 311 Elm Street as appellant's home address even though he did not have sufficient information available to determine accurately if that indeed was appellant's residence.

The Supreme Court has not yet determined the extent to which a court may entertain testimony attacking the validity of a warrant which is valid on its face and which was issued on the basis of allegations contained in an affidavit which established probable cause. *See Rugendorf v. United States,* 376 U.S. 528, 531–32, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). Nor has that issue been ruled upon conclusively in this jurisdiction. *See United States v. Thornton,* 147 U.S. App.D.C. 114, 124 & n.68, 454 F.2d 957, 967 & n.68 (1971). However, several courts have permitted such challenges. *See, e. g.,*

United States v. Thomas, 489 F.2d 664 (5th Cir. 1973), cert. denied, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975); United States v. Carmichael, 489 F.2d 983 (7th Cir. 1973) (en banc). In Carmichael the Seventh Circuit held that an affidavit containing a misrepresentation is invalid if (1) the misrepresentation—whether material or not—was intentionally made, or (2) the misrepresentation was recklessly made and was material to the finding of probable cause. 489 F.2d at 989.

■ We do not find it necessary to decide today whether a similar dual standard should be adopted in this jurisdiction. The trial court ruled that the inaccuracies which were contained in Detective Fontana's affidavit were not material to the finding of probable cause, and that they were not made with an intent to deceive the issuing judge. For the reasons stated below, we agree with those assessments. Accordingly, we hold only that a nonmaterial misrepresentation which is made unintentionally does not call for the suppression of evidence which has been seized pursuant to a warrant based on probable cause. We express no opinion on whether an intentional misrepresentation, whether material or immaterial, would require reversal, and we also decline to give an advisory opinion as to what degree of culpability must exist before a material misrepresentation will require suppression.

In the instant case, as noted, the trial court ruled that the inaccuracies cited by appellant were not made with an intent to deceive the judge who issued the warrant.[4] In reviewing the trial court's findings, we must view the evidence presented in the light most favorable to the government and we are not at liberty to overturn those findings unless we conclude that they are clearly erroneous. See United States v. Branch, 178 U.S.App.D.C. 99, 102, 545 F.2d 177, 180 (1976); see also D.C.Code 1973, § 17–305(a).

The trial court found that two misrepresentations were contained in the affidavit which had been filed in connection with the search warrant. The affidavit read in part: "The source stated that the subjects responsible for the [robbery] were Gordon Phillip Metts and James Louis Reid." Actually, the informant had merely advised the officer that Reid had been "approached by Metts about the holdup." The officer acknowledged that he "jumped the gun so far as Reid is concerned, and assumed that he had pulled the robbery with Metts." The officer did not realize that Reid was not involved until the informant, after learning that Reid had been arrested, contacted the detectives and absolved Reid of any participation in the offense. The trial court concluded that while the officer should have been more careful in extracting the facts from the informant, the misrepresentation was unintentional. The trial court's finding is adequately supported by the testimony introduced at the hearing on the motion to suppress. Furthermore, we agree with the trial court's conclusion that if all mention of Reid's involvement in the crime had been excised from the affidavit, probable cause for the issuance of a warrant for the search of appellant's residence would have remained. The inaccurate statement as to Reid, therefore, was not material to the issuance of the warrant.

The second misrepresentation identified by the trial court was the statement: "The complainant at this time picked the photo of Gordon Metts and identified same as the person that robbed him on 2–28–75." That statement was not totally accurate. After viewing the photo array, the complainant made only a tentative identification of appellant. At the motions hearing the officer acknowledged his error, but explained: "We believed, at that time, there was money in the premises. We didn't want anyone to walk up. We were—I was pressed for time, and I just overlooked it."

---

4. Since a hearing on appellant's motion to suppress the evidence was held by the trial court, it is not necessary for us to delineate what showing, if any, must be made by a defendant to entitle him to a hearing the purpose of which is to consider an attack on a facially valid affidavit. See United States v. Marihart, 492 F.2d 897, 899 (8th Cir.), cert. denied, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974); United States v. Thomas, supra, at 667 n.2.

The Supreme Court has stressed that affidavits in support of applications for warrants usually are drafted by laymen in the "midst and haste of a criminal investigation." *United States v. Ventresca, supra,* 380 U.S. at 108, 85 S.Ct. at 746. Accordingly, such affidavits are to be reviewed in a common sense and realistic manner. *United States v. Harris,* 403 U.S. 573, 577, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (plurality opinion); *United States v. Ventresca, supra; Tyler v. United States,* D.C.App., 298 A.2d 224, 227 (1972). The trial court stated in its findings that there was no evidence to indicate that the mistake—which was relatively minor—was other than inadvertent. Indeed, the trial court noted that the affidavit in support of the application for an arrest warrant, which the officers had presented prior to seeking a search warrant, did characterize the identification as "tentative." Had the officers intended to deceive the issuing judge, presumably they would have deleted the term "tentative" from the first affidavit, since both affidavits were presented to the same judge. Viewing the evidence in the light most favorable to the government, we cannot say that the trial court's findings on this point are clearly erroneous.

Additionally, we are persuaded that the failure to designate the identification as "tentative" in the affidavit was not material to the determination of probable cause. Even if the affidavit had specified that the identification was tentative, the informant's revelations, coupled with appellant's admission that a large sum of money would be found at the house and his fabricated explanation for possession of that money, collectively provided more than ample probable cause for the issuance of the search warrant.[5]

*Affirmed.*

---

**5.** The other two alleged misrepresentations cited by appellant were in fact not misrepresentations. Appellant asserts that since the informant had not provided information to Detective Fontana personally in the past, he could not vouch for the informant's credibility. We find this contention to be without merit. Initially, the informant provided information to Detective Fontana concerning this particular case, and that information was corroborated by the police investigation and by information demonstrating the informant's reliability in other specified cases. Further, Detective Fontana testified that he knew of at least one other armed robbery case in which the informant had provided correct information to another officer in the past. Although Fontana had not handled that other case personally, the totality of his knowledge about the informant was sufficient to justify his statement that the source was reliable. *See Waldron v. United States, supra,* at 1373. Appellant also contended that Detective Fontana misrepresented that 311 Elm Street was appellant's home address. That statement does not constitute a misrepresentation; that was appellant's residence.