**In the Matter of Y. G., Appellant.**

**No. 11721.**

District of Columbia Court of Appeals.

Argued May 11, 1978.

Decided Feb. 27, 1979.

Richard L. Foster, Washington, D. C., appointed by this court, for appellant.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the case was argued, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on brief, for appellee.

Before NEBEKER and MACK, Associate Judges, and NUNZIO,* Associate Judge, Superior Court of the District of Columbia.

PER CURIAM:

Appellant, a sixteen year old female, was convicted of and adjudged a delinquent for possession of marijuana with intent to distribute, 21 U.S.C. § 841(a) (1970). On appeal, appellant assigns as error the trial court's denial of her motion to suppress evidence, and specifically contends that the search of her residence pursuant to a warrant was illegal on the following three grounds: (1) the warrant was used as a sham to conduct a general exploratory search; (2) the execution of the search which assertedly involved taking of some property and the wanton destruction of other property was so unreasonable as to violate appellant's Fourth and Fifth Amendment rights; and (3) the affidavit in support of the warrant application contained misrepresentations of fact which vitiated the search warrant. We find the record unsupportive of the former claims but remand the case for trial court consideration of the last issue in light of the recent Supreme Court decision in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

The facts may be summarized briefly. On September 15, 1976, Eugene Reagan, a Special Agent of the Bureau of Alcohol, Tobacco and Firearms, presented a multi-paragraph affidavit in support of a search warrant to a United States District Magistrate. The affidavit sought to establish probable cause to believe that Kenneth Lamont Washington, an adult, was in possession of illegal firearms at 1006 S Street, N.W., where Washington was said to reside.[1] Magistrate Kennedy issued the warrant, directing the search for and seizure of any firearms within the above premises.

At approximately 5:30 p. m. the same day, a search of 1006 S Street, N.W. was conducted by Agent Reagan along with five other special agents from the Bureau of Alcohol, Tobacco and Firearms, and two uniformed and six plainclothes officers of the Police Department. During the initial phase of the search, 40 "nickel bags" of marijuana were seized from under a mattress on which Y.G. had been reclining when the officers entered the room. She was arrested after she stated that the contraband was hers.

■ As to appellant's assertion that the warrant was a sham for a calculated general (and unconstitutional) search, it is noted that a trial court found there was no credible evidence to reflect that the warrant was used as a ruse for a general search. One predicate for challenging the admissibility of the evidence is the fact that local vice squad police officers accompanied the federal agents. We see no basis for faulting the trial court's refusal to infer, as appellant urged, that this combination of law enforcement officers reveals a design to conduct a forbidden general search under the guise of a firearms search warrant. As one federal agent explained in his testimony, it is customary here for local police, uniformed and plainclothes, to accompany these federal agents "to guard the front and back exits," and ". . . because of the obvious. If someone comes up to your door he may have a badge on. But, a uniformed man, people instinctively recognize the uniformed policeman as a policeman." The finding of the trial court is supported. *See* D.C.Code 1973, § 17–305(a).

■ As to appellant's assertion that the law enforcement officers, in violation of the Fourth and Fifth Amendment, deliberately and maliciously destroyed property within

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. The allegations within the affidavit which pertained to Washington's possession of firearms were based principally upon information received from a purported reliable source. In support of the belief that Washington lived at

1006 S Street, N.W., the affiant relied upon information which Washington provided to the police when arrested on an unrelated charge on April 30, 1976; on information obtained during a check with the rental agents for 1006 S Street; and on information obtained from the Department of Motor Vehicles.

the searched premises when a less destructive means of executing the search was available to them, we are unpersuaded that the point has merit on this record. There was testimony to this effect from several witnesses deemed by the trial court to be "suspect because each of them has an interest in the outcome of the case . . . ." They were Y.G. and her relatives and friends. The trial court also faulted appellant for failing to call known and available witnesses (local police officers who allegedly engaged in the search). More importantly, however, it was Y.G.'s mother who put the time of the asserted tortious search after the marijuana seizure. She testified that it was after the marijuana was seized that "[t]hen they went upstairs and started tearing the house up." Thus the causal link between the asserted illegal action and the earlier valid seizure is missing. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *cf. Go-Bart Importing Co. v. United States*, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931) (arrests made pursuant to valid arrest warrants were legal notwithstanding inadmissibility of evidence later obtained through warrantless searches and seizures). Accordingly, the subsequent allegedly illegal conduct did not retroactively invalidate the search and seizure. *See generally G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) (valid auto seizures followed by invalid premises search).

■ The broad issue of whether the warrant authorizing the search was invalid due to deliberate material misrepresentations set forth in the supporting affidavit is of considerable substance. Included in appellant's initial assertion are the preliminary issues of whether she was entitled to challenge the truthfulness of the information contained within the affidavit and whether she was entitled to a hearing thereon.

The appellant contends, and the record reflects, that appellant was denied an opportunity fully to proffer to the trial court the nature of the evidence purporting to challenge the accuracy and veracity of the contents of the affidavit. When addressing appellant's counsel on this point, prior to the suppression hearing, the trial court correctly observed that this jurisdiction provided no authority for a challenge to the validity of a search warrant on the basis of erroneous information contained within the supporting affidavit.[2] Consequently, the trial judge refused to go "beyond the four corners of the affidavit." At the time of the trial court's ruling, late in 1976, this issue had not been conclusively ruled upon by either appellate court in the District of Columbia.[3]

On June 12, 1978, this court ruled in *Metts v. United States*, D.C.App., 388 A.2d 47 (1978), that a nonmaterial and unintentional misrepresentation does not call for the suppression of evidence. However, the court declined to determine what degree of culpability must exist before a material representation will require suppression. Not before the court in *Metts v. United States*, *supra*, and thus left unresolved, was the question of what method of preliminary showing of proof is required of defendants when challenging the truthfulness of affidavits, and, further, under what circum-

---

2. The trial judge permitted appellant's counsel to proffer one basis for his challenge for the purpose of appellant's record on appeal. Appellant's counsel thereupon offered to prove that the law enforcement officers had not checked the Department of Motor Vehicles' records during their investigation of Kenneth Lamont Washington's address as they had claimed to have done in the affidavit. In support of the claim that the affidavit was falsified, appellant had obtained and sought to offer a certified copy of the official driving record from the Department of Motor Vehicles which did not show 1006 S Street as Washington's ad-

dress. On appeal, the appellant contends that had she been allowed to proffer fully, she would have revealed additional misrepresentations in the affidavit. Appellant further contends that the misrepresentations were deliberate and that their cumulative effect would have materially affected the probable cause necessary to issue a search warrant.

3. *Lerner v. United States*, D.C.Mun.App., 151 A.2d 184, 187 (1959); *United States v. Watts*, 176 U.S.App.D.C. 314, 540 F.2d 1093 (1976); *United States v. Thornton*, 147 U.S.App.D.C. 114, 124, 454 F.2d 957, 967 (1971).

stances defendants are entitled to a hearing to pursue such a challenge.

In *Franks v. Delaware, supra,* as in the instant appeal, the petitioner was denied an opportunity to challenge the veracity of the affidavit in support of a search warrant, during the execution of which evidence was seized that ultimately led to his conviction. The Delaware Supreme Court held that under no circumstances did a defendant have the right to challenge the truthfulness of the warrant application.

In reversing the Delaware Court, the Supreme Court established the following guidelines which are adopted by this court:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth Amendment, to his hearing. Whether he will prevail at that hearing is, of course, another issue. [*Franks v. Delaware, supra,* 98 S.Ct. at 2685 (footnote omitted).]

The Supreme Court declined to pass on the adequacy of the petitioner's proffer in *Franks,* noting in its ruling that the framing of suitable rules to govern proffers is more properly left to the states.

We conclude that the appropriate remedy at this time is to remand this case in order that the parties and the trial court initially may evaluate the impact of *Franks v. Delaware, supra,* on this case. We intimate no view as to the right to a hearing since a complete proffer is not included in the record.

The case is remanded for further proceedings and the judgment of conviction is to abide the ruling of the trial court.

MACK, Associate Judge, concurring in part:

I concur only in that part of the majority opinion that holds that this case must be remanded for reconsideration in light of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).