(No. 57401.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LAURA EXLINE, Appellee.

*Opinion filed October 21, 1983.*

GOLDENHERSH and SIMON, JJ., dissenting.

Neil F. Hartigan and Tyrone C. Fahner, Attorneys General, of Springfield, and Edward F. Petka, State's Attorney, of Joliet (Ellen M. Flaum and Kenneth A. Fedinets, Assistant Attorneys General, of Chicago, and John X. Breslin and Gerry R. Arnold, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Gray, Kleczek & Kielian, P.C., of Joliet (Gerald G. Kielian, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Defendant, Laura Exline, was charged by information with the offenses of possession of a controlled substance, possession of cannabis with the intent to deliver, and the unlawful use of weapons (Ill. Rev. Stat. 1979, ch. 56½, pars. 1402(b), 705(d); ch. 38, par. 24—1(a)(7)). Following her pretrial motion, the circuit court of Will County quashed a search warrant and suppressed evidence recovered by narcotics agents pursuant to the warrant. A divided appellate court affirmed, holding that the State failed to establish the credibility of the informant whose information provided the basis for the warrant. (108 Ill. App. 3d 926.) We granted the State leave to appeal.

The sole issue raised for review is whether the affidavit in support of a search warrant contained sufficient information to sustain a determination of probable cause.

On October 10, 1980, a search warrant was issued authorizing police to search the apartment of Jeff Smith for the purpose of recovering cannabis and drug-related paraphernalia. Defendant resided in the apartment with Smith. The affidavit in support of the warrant stated that the affiant, an agent with the Metropolitan Area Narcotics Squad (MANS), met with a confidential informant within the previous 10 days. The informant advised him that he could purchase cannabis from Smith, who, he said, resided in apartment No. 110 at 1860 B, Aycliff Court in Joliet. He further stated that Smith sold him "quantities of cannabis" in the past.

Three controlled purchases were subsequently conducted. On the first two occasions, the informant was searched for contraband or money, and none was found. He was then furnished with prerecorded funds, for the purpose of purchasing cannabis, and was driven by a MANS agent to 1860 B, Aycliff Court, a three-story multi-family apartment complex. The informant entered the building through the main entrance, and returned shortly thereafter to the agent's vehicle. He advised the agent that he could purchase cannabis and was told to do so. He then reentered the building, again through the main entrance, and was next seen when he exited the doorway and returned to the vehicle. Upon returning to a pre-arranged location, the informant produced a tinfoil packet containing a substance which field tests revealed to be cannabis. The informant was then searched and no contraband, or money, was found.

A third controlled purchase was conducted five days prior to the issuance of the search warrant. On this occasion, the informant made but a single visit to the building and purchased cannabis. Otherwise, the circumstances of the three purchases were substantially similar. The complaint for a search warrant further related that the Joliet telephone directory listed Jeff Smith as resid-

ing at 1860 Aycliff Court, Apartment No. 110.

When the police subsequently executed the warrant, defendant was present. After establishing that she resided in the apartment with Smith, she was arrested and charged with the prior-related offenses.

Since this case was taken under advisement, the Supreme Court rendered a decision in *Illinois v. Gates* (1983), 462 U.S. ___, 76 L. Ed. 2d 527, 103 S. Ct. 2317, abandoning the frequently cited *Aguilar-Spinelli* test. In its stead, the court adopted a "totality of the circumstances" approach for determining when there is probable cause for issuance of a search warrant. The opinion does not indicate whether this new rule should be given retroactive or prospective application. We need not resolve this question here since, under either approach, the affidavit contained sufficient information to sustain a determination of probable cause. Because the parties' arguments are based upon *Aguilar-Spinelli,* we first address the issue in accordance with that test.

Under *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, a warrant may issue based upon information supplied by a confidential informant if the magistrate is "informed of [1] some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and [2] some of the underlying circumstances from which the officer concluded that the informant *** was 'credible' or his information 'reliable.' " (*Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514.) No question is raised as to the basis of the informant's knowledge that the narcotics were where he claimed they were. Rather, defendant contends that the affidavit failed to set forth sufficient facts establishing the reliability of the informant or the credibility of his information. She points out

that, since the police officers did not actually observe the informant enter Smith's apartment, it is conceivable that he obtained the cannabis from another resident of the building.

Defendant's argument ignores the well-settled distinction between the quantum of proof necessary to obtain a criminal conviction, and that which is required to show probable cause for an arrest or search. Only the probability of criminal activity, and not proof beyond a reasonable doubt, is the standard for assessing probable cause. (*Spinelli v. United States* (1969), 393 U.S. 410, 419, 21 L. Ed. 2d 637, 645, 89 S. Ct. 584, 590, citing *Beck v. Ohio* (1964), 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223.) The question, therefore, is one of *probabilities* which "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States* (1949), 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310.

The facts set forth in the instant affidavit were sufficient to indicate that, more probably than not, narcotics would be found on the premises in question. The affiant had first-hand knowledge of all the facts to which he attested except that Smith was the actual perpetrator of the offense. Police investigation verified Smith's residence and corroborated the informant's statement that he could purchase cannabis there. That certain details of the informant's information proved true lends credence to those details which were not confirmed. *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329. See *Jaben v. United States* (1965), 381 U.S. 214, 14 L. Ed. 2d 345, 85 S. Ct. 1365 (it is not necessary that every factual allegation be independently confirmed).

More importantly, it has been recognized that "corroboration will suffice to show veracity [where] the in-

formant has not been working independently, but rather has cooperated closely with the police, as is true when the informant makes a controlled purchase of narcotics." (1 W. LaFave, Search and Seizure sec. 3.3, at 559 (1978); see also *State v. Gamage* (Me. 1975), 340 A.2d 1; *State v. Barrett* (1974), 132 Vt. 369, 320 A.2d 621.) This close police surveillance in controlled purchases of drugs serves to minimize the risk of falsehood and reduce reliance on the informant's credibility.

In the instant case, the entry into defendant's apartment was the only unobserved activity on the part of the informant. To require police officers, in cases involving multiple-dwelling units, to be present and witness the informant enter a defendant's apartment would obviate the need for a search warrant. Where a police officer "has reasonable grounds to believe that the person is committing or has committed an offense" no warrant is required. Ill. Rev. Stat. 1979, ch. 38, par. 107—2(c).

For these reasons, we hold that the informant's credibility was sufficiently established, and the warrant was therefore not obtained in violation of *Aguilar* and *Spinelli*. It follows that the affidavit complied with the less rigid standard for determining probable cause set forth in *Illinois v. Gates* (1983), 462 U.S. ___, 76 L. Ed. 2d 527, 103 S. Ct. 2317.

As previously related, *Gates* abandoned the so-called "two-prong" test, wherein both the informant's basis of knowledge and his credibility must be independently established. Under the new "totality of the circumstances" analysis, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. ___,

___, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.

Here, there was at least a "fair probability," based upon the corroborated informant's tip, that narcotics would be discovered in Smith's apartment. The three controlled purchases so decreased the opportunity for falsehood as to provide the requisite *indicia* of reliability. *Cf. Illinois v. Gates* (1983), 462 U.S. ___, ___, 76 L. Ed. 2d 527, 552-53, 103 S. Ct. 2317, 2335-36 (police corroboration of *innocent* details provided a sufficient basis to credit the informant's statement that defendants were engaged in illegal activity).

In view of the deference accorded the decision of the issuing magistrate (*Illinois v. Gates* (1983), 462 U.S. ___, 76 L. Ed. 2d 527, 103 S. Ct. 2317; see *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725), and recognizing that, in doubtful cases, the warrant should be upheld (*United States v. Ventresca* (1965), 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741), it cannot be said that the magistrate erred in his assessment of probable cause. Accordingly, the judgments of the appellate and circuit courts are reversed, and the cause is remanded to the circuit court of Will County for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE GOLDENHERSH, dissenting:

I dissent and would affirm the judgment of the circuit and appellate courts. Assuming, *arguendo*, that the majority has correctly construed the opinion in *Gates*, the Supreme Court did not obviate the requirement that there appear in "the totality of the circumstances" a basis for attributing some degree of reliability to the unnamed informant. The Supreme Court said:

"We agree with the Illinois Supreme Court that an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his re-

port." (*Illinois v. Gates* (1983), 462 U.S. ___, ___, 76 L. Ed. 2d 527, 543, 103 S. Ct. 2317, 2327.)

The problem here is that there is no evidence of the informant's reliability which can support the issuance of a warrant to search a particular apartment. Admittedly, the entrance through which the informant entered the building after leaving the police officer led to a number of apartments. During the time that the informant was inside the building he was not within sight of the police officer, who had no knowledge as to which apartment, if any, he entered.

The fact that the police officer verified that a tenant with the name given him by the informant occupied one of the apartments did not indicate that the informant had entered that apartment or contacted the defendant. The after-the-fact corroboration by the discovery of contraband is of no value in determining the validity of the information which was presented to the magistrate at the time of the issuance of the warrant. To quote from Justice Stevens' dissent in *Gates*, "I must surmise that the Court's evaluation of the warrant's validity has been colored by subsequent events." 462 U.S. ___, ___, 76 L. Ed. 2d 527, 584, 103 S. Ct. 2317, 2361.

I agree with the appellate court that the affidavit did not contain sufficient information to support the issuance of a search warrant.

There is another aspect of the case which the majority did not consider. This court decided *Gates* on the basis of the fourth amendment to the Constitution of the United States and article I, section 6, of the Constitution of Illinois. As was pointed out in both the majority opinion and Justice White's concurrence in *Gates*, we are not required to blindly follow the action taken by the Supreme Court in determining the standards applicable under our own constitution. In his eloquent dissent in *Gates*, Justice Brennan has stated far better than can I the reasons for rejecting the holding in *Gates* and retaining the tests and standards

enunciated in *Aguilar* and *Spinelli*. I would retain those tests and standards as constitutional requirements in Illinois.

JUSTICE SIMON joins in this dissent.