**UNITED STATES of America**

v.

**Charles M. RICHARDSON, Appellant.**

**No. 87–3100.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 9, 1988.

Decided Nov. 15, 1988.

Thomas Lumbard, Washington, D.C., appointed by this Court, for appellant.

Andrew Levchuk, Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty. and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before EDWARDS, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

The defendant-appellant, Charles M. Richardson, appeals from the district court's denial of a motion to suppress evidence of drug violations. The defendant alleges two errors. First, he claims that the search of his apartment was invalid because the affidavit supporting the search warrant inaccurately stated that the affiant, a police officer, had personally observed an informant enter the defendant's apartment and leave with drugs. Second, the defendant challenges the subsequent search of his automobile, claiming that the police unlawfully seized the car and drove it to the police station before obtaining a warrant to search it. Because we find no error in the district court's judgment, we affirm.

## I. BACKGROUND

In June 1987, a confidential informant advised Officer Thomas Hardy of the D.C. Metropolitan Police Department that the defendant was selling cocaine and PCP and that the informant could make a drug purchase from the defendant. A few days later, Hardy arranged with the informant to make two controlled drug buys from the defendant; the buys were to be completed on two separate days at the defendant's apartment building. On both occasions, Hardy first conducted a search to ensure that the informant was free of money and drugs; Hardy then gave the informant marked bills with which to purchase the drugs. While Hardy and another officer observed from their car parked next to the building, the informant knocked on a first-floor window, spoke with someone, and then entered the building. Five to ten minutes later, the informant emerged from the building with white powder that field tested positive for cocaine.

After returning with the cocaine on the second occasion, the informant told the officers that the defendant would be leaving the building shortly with a woman. The defendant and a woman then appeared, dressed as the informant had described, and the informant identified the defendant as the person who sold the drugs.

The informant told the officers that the cocaine had been purchased in apartment number one, the first apartment on the left-hand side of the first floor. The building had no rear exit. The entrance to the apartment building was such that, once the informant went into the building, the officers could not see which apartment the informant had entered. Hardy admitted at the suppression hearing that he did not know what happened once the informant entered the building, beyond what the informant told him.

Following the two controlled buys, Hardy filed an affidavit requesting a search warrant for "the entire premises of 3531 Jay Street, Northeast, Washington, D.C., Apartment One." The affidavit stated that Hardy had met with a "confidential source" who informed him that the defendant was selling drugs. The affidavit then recounted the two buys, twice stating that "[t]he affiant observed the source walk into the described location without stopping to talk with anyone and come out and walk directly back to the affiant without stopping to talk with anyone." The affidavit did not mention that the informant had knocked on the window, had accurately predicted that the defendant would leave the building, or had identified the defendant when he did so. Nor did the affidavit mention that the informant had identified the defendant's automobile (which was reg-

istered in Virginia) or that the name obtained from checking the tag numbers was run through a computer, revealing the defendant's Jay Street address.

The search warrant was executed on June 16 and uncovered cocaine, PCP and a gun, among other items. While the search was progressing, the officers learned that the informant had telephoned the police station to report that the defendant's car was parked outside the apartment building and contained more drugs. The officers again checked the car's license plates, which were registered under the name that the informant had indicated the defendant was using. The officers then informed the defendant (who was in the apartment during the search) that they were impounding his car, obtained the keys from him, and drove the car to the impound lot. The officers subsequently obtained a search warrant and searched the car, finding more drugs.

The district court denied the defendant's motion to suppress, finding that the evidence was seized in reasonable, good faith reliance on facially valid search warrants, and that there was no indication of lack of good faith or falsity. The court found that the affidavit supporting the search warrant for the apartment met the *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), totality-of-the-circumstances test for determining probable cause. The court also noted that the automobile was found in a high narcotics trafficking area and that exigent circumstances justified the removal of the automobile without first obtaining a warrant. The defendant appealed.

## II. ANALYSIS

### A. *The Search of the Apartment*

The defendant argues that the search warrant for his apartment was invalid be-

cause the affidavit supporting it falsely stated that Officer Hardy had seen the informant enter and leave "the described location"—"3531 Jay Street, Northeast, Washington, D.C., *Apartment One*" (emphasis added)—when in fact Hardy had only seen the informant enter the apartment complex.[1] Whether the inaccurate statement is excised from the affidavit or is corrected, the defendant argues, the affidavit does not demonstrate probable cause.

■ The test for reviewing an allegation that a warrant was based on a false affidavit derives from the Supreme Court's decision in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667(1978). Under the *Franks* test,[2] in order to challenge the affidavit successfully, the defendant must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth. *See id.* 438 U.S. at 155–56, 98 S.Ct. at 2676–77; *United States v. Ferguson,* 758 F.2d 843, 848 (2d Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985). We need not resolve whether the statements were false or material. Even assuming that they were, the district court's finding that Officer Hardy acted in good faith was not clearly erroneous, and there has been absolutely no showing that he made the statements with scienter.

Read strictly and with the benefit of hindsight, the affidavit is undoubtedly inaccurate. It states that the affiant saw the informant enter "the described location," which was described as "Apartment One," when in fact Hardy only saw the informant enter the apartment complex. On the other hand, if we consider that a reviewing court must give an affidavit a "sensible, pragmatic reading, one that takes account

---

1. The apartment was actually number 101, not 1, but the defendant has not argued that this discrepancy was material.

2. The precise question in *Franks* was whether the defendant was entitled to an evidentiary hearing on the issue of falsity. Subsequent judicial decisions have applied the *Franks* test in

ruling on the validity of a search warrant even after the facts relating to the alleged falsity of the supporting affidavit have been determined. *See, e.g., United States v. Ferguson,* 758 F.2d 843, 848 (2d Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985); *United States v. Davis,* 714 F.2d 896, 899 & n. 5 (9th Cir.1983).

of the pressure of time and the typical level of verbal skills in laymen police officers," *United States v. Watts*, 540 F.2d 1093, 1097 (D.C.Cir.1976); *accord Illinois v. Gates*, 462 U.S. at 235, 103 S.Ct. at 2330, it would not be unreasonable to read the affidavit as being merely ambiguous as to whether Hardy saw the informant enter the defendant's apartment itself. However, we need not resolve here whether this inaccuracy or ambiguity meets the falsity prong of the *Franks* test.

Even assuming that the statement was false, it is not at all clear that the falsity was material.[3] It is not necessarily crucial to a finding of probable cause that a police officer observe an informant enter the specific apartment where a controlled buy is being conducted. *See Jones v. United States*, 336 A.2d 535, 537 (D.C.), *cert. denied*, 423 U.S. 997, 96 S.Ct. 427, 46 L.Ed.2d 372 (1975); *People v. Exline*, 98 Ill.2d 150, 74 Ill.Dec. 610, 456 N.E.2d 112, 115 (1983). To hold otherwise "would make apartment houses effectively off limits to officers seeking to enforce the narcotics laws." *Jones*, 336 A.2d at 537. On the other hand, it is unclear whether the fact of the controlled buy alone is sufficient under such circumstances to demonstrate probable cause without other corroborating evidence. In *Jones*, for example, the informant had proven reliable on at least five occasions in the prior two months, and in *Exline*, police investigation had verified that the apartment belonged to the person whom the informant accused of selling drugs. The affidavit in the present case did not supply such corroborating evidence.[4]

■ Nevertheless, we need not decide whether the inaccuracy in the affidavit was material, because even if the statement was false and material to the issue of probable cause, the defendant has made no contention that it meets the third prong of the *Franks* test—*i.e.*, that the statement was made knowingly and intentionally or with reckless disregard for the truth. Officer Hardy could easily have written the affidavit without realizing that it gave the misleading impression that he had seen the informant enter Apartment One. Moreover, the district court found that there was nothing to indicate lack of good faith on the officer's part. Consequently, even if the inaccurate statement in the affidavit was material to the issue of probable cause, the evidence uncovered during the search was admissible because the affidavit was made in good faith, the warrant was issued by a detached and neutral magistrate, and the warrant was reasonably relied on in good faith by the police officers. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

Although we uphold the search in this case, our holding should not be read to sanction the use of boilerplate or inaccurate affidavits. Nor do we mean to suggest that blatantly false affidavits can survive challenge on a claim of "good faith."[5] Police officers must take care to include all evidence of probable cause available to them in their affidavits, and the affidavits

---

**3.** The government argues that this court must give deference to the district court's determination of probable cause. Yet, the district court did not determine whether the affidavit would have demonstrated probable cause if it had been completely accurate. This court must therefore assess on its own whether the affidavit would have demonstrated probable cause if it had accurately described the officer's limited observation of the controlled buy.

**4.** The parties agree that additional indicia of probable cause not included in the affidavit—the fact that Officer Hardy had seen the informant knock on the apartment window, that the informant had accurately predicted that the defendant would leave the building with a woman and had described how they would be dressed,

and that the police had run a computer check on the car identified by the informant—may not be considered in addressing whether probable cause existed to obtain the warrant. *See Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987).

**5.** The *Leon* "good faith" exception would not apply if Hardy had made a false, material statement knowingly and intentionally or with reckless disregard for the truth, even if a second officer had executed the search in reasonable, good faith reliance on the warrant. It would eviscerate the Fourth Amendment and encourage subterfuge to allow an officer to rely in "good faith" on a warrant obtained in bad faith with a false affidavit.

must accurately reflect the facts of the particular case. In this case, the evidence indicates that police officers acted in good faith and that the affidavit was infected by nothing more than honest error; that is not enough to support a motion to suppress.

B. *The Search of the Automobile*

We also reject the defendant's contention that seizure of his car without a warrant was unlawful. The car was located in a drug trafficking area and there was a risk that the automobile or its contents might be disturbed before the police could obtain a warrant. The district court therefore reasonably found that exigent circumstances justified a warrantless seizure. *See United States v. Caroline*, 791 F.2d 197, 200 (D.C.Cir.1986). Moreover, there is no dispute that the search itself was conducted with a warrant that was obtained with probable cause demonstrated independent of any evidence obtained through the seizure.

### III. CONCLUSION

The district court's denial of the motion to suppress is affirmed.

AFFIRMED.