Joseph E. **DAILEY**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 85–CF–793.

District of Columbia Court of Appeals.

Argued Oct. 2, 1991.
Decided June 26, 1992.

Jo–Ann Wallace, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief for appellant.

J. Patrick Rowan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., were on the brief for appellee.

Before STEADMAN and WAGNER, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Appellant appeals from his conviction in Superior Court of the District of Columbia of two counts of voluntary manslaughter while armed. D.C.Code §§ 22–2405, –3201–02 (1989 Repl.). We find no error in the trial court's ruling that appellant failed to establish by a preponderance of the evidence that a detective acted with intent to mislead the court, or with reckless disregard for the truth in omitting a witness' age from an affidavit in support of an arrest warrant. Accordingly, we hold there was no error in the trial court's denial of the motion to suppress appellant's confession or the testimony of the eyewitness as illegal fruits of an invalid warrant affidavit.

## FACTS

### I.

In the early morning of May 24, 1982, a woman's body [hereinafter S.J.] was found in the rear of a Giant Food Store in North-west Washington with multiple stab wounds. At S.J.'s apartment, her mother [hereinafter J.J.] was discovered, also dead of stab wounds, with a long knife protruding from the back of her neck. The police also observed a trail of blood leading out of the apartment to the rear of the building and in the direction of S.J.'s body. During Detective John Clark's initial investigation of the apartment, he found two notebooks which referred to "Joe" and "Mr. Dailey," respectively. A note in one of the notebooks suggested some animosity between J.J. and "Joe." Then, in the course of notifying the decedents' next-of-kin, Detective Clark learned that S.J.'s boyfriend of nearly two years was Joe Dailey, the appellant.

In the apartment, the police also found a three-and-one-half year-old child, S.J.'s daughter, unharmed, who immediately began repeating to them, to her relatives, and to all who would listen, that "Joe cut Mama!" Although the child was emotionally upset during the taped interview and had some difficulty following some of the questions, she continued to state that "Joe cut Mama." Detective Clark also learned from relatives that the child had lived with her mother since birth, and he assumed that the girl was acquainted with Joe Dailey for at least one year. Furthermore, when the girl was shown a photograph of Joe Dailey, she said that he was "Joe" who "cut Mama."

Relying on this evidence, the detective believed that S.J. had been stabbed in the apartment while her young daughter watched, then dragged to the parking lot. That same afternoon, S.J.'s new boyfriend gave a statement to the police which suggested a possible motive and opportunity for the murder of S.J. by Joe Dailey, her apparently jilted boyfriend.

Later that same day, Detective Clark prepared an affidavit in support of a warrant for the arrest of appellant for the death of S.J., which was signed by a Superior Court judge.[1] After appellant was ar-

---

1. The affidavit included the following description of the offense:

On Sunday, May 24, 1982[,] the complainant (Decedent) [S.J.'s] body was found in the rear of 3460 14th street N.W. with multiple stabb

rested, he initially gave the police different versions of his whereabouts at the time of the stabbing of S.J. and her mother, J.J. Later, after stating to the police, "I know you wouldn't charge me unless you found a witness," and when the police said nothing, appellant mentioned the name of a male eyewitness to the homicides. Thereafter, appellant confessed in writing that he stabbed both victims. A grand jury indicted appellant on four counts: first-degree (premeditated) murder of S.J. while armed, (D.C.Code §§ 22–2401, –3202 (1989 Repl.)); first-degree burglary while armed, (*id.* §§ 22–1801(a), –3202); first-degree (felony) murder of J.J. while armed, (*id.* §§ 22–2401, –3202); and first-degree (premeditated) murder of J.J. while armed, (*id.* §§ 22–2401, –3202).

The defense moved to suppress Mr. Dailey's written confession and the testimony of the male witness to the murders on the ground that the omission of the child's age from the affidavit was a violation of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The trial court held an extensive pretrial *Franks* evidentiary hearing, but ruled that the defendant did not meet the *Franks* test by a preponderance of the evidence. A jury found appellant not guilty on all four charged counts, but guilty of the lesser-included offense of voluntary manslaughter while armed of both S.J. and J.J. Appellant appeals the trial court's ruling that appellant failed to establish by a preponderance of the evidence that he was entitled to suppression of his written confession and the testimony of the eyewitness pursuant to *Franks.*

## II.

The Supreme Court in *Franks v. Delaware, supra,* 438 U.S. at 154, 98 S.Ct. at

2674, established a test for reviewing an allegation that a warrant was based on a false or misleading affidavit. In *In re Y.G.,* 399 A.2d 65, 68 (D.C.App.1979), we adopted the *Franks* guidelines for determining whether an evidentiary hearing is required to resolve whether evidence should be suppressed. Because there is "a presumption of validity with respect to the affidavit supporting the search warrant ... the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* at 68 (quoting *Franks, supra,* 438 U.S. at 171, 98 S.Ct. at 2684). To mandate an evidentiary hearing, there must be "allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.... Allegations of negligence or innocent mistake are insufficient." *Id.* (quoting *Franks, supra,* 438 U.S. at 171, 98 S.Ct. at 2684). Finally,

> if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth Amendment, to his [or her] hearing.

*Id.* (quoting *Franks, supra,* 438 U.S. at 171–72, 98 S.Ct. at 2684–85).

In applying the *Franks* test, some reviewing courts give the challenged affidavit a " 'sensible pragmatic reading, one that takes account of the pressure of time and the typical level of verbal skills in laymen police officers.' " *United States v. Richardson,* 274 U.S.App.D.C. 58, 60–61, 861 F.2d 291, 293–94 (1988) (quoting *Unit-*

[sic] wounds to the body. The body was transported to D.C. General Hospital and pronounced [dead] by Doctor Borie of D.C. General staff.
The Medical Examiner Doctor Blackburn ruled the above decedent[']s death as a Homicide stabbing.
During the investigation a witness to the above offense was interviewed, and stated the above defendant stabbed the complainant.

The witness was shown [a] photo of the defendant subsequently again stating "this is Joe" that did the stabbing. The witness has known the defendant for over a year. *The witness observed the defendant do the stabbing.*
In view of the above facts the undersigned respectfully request[s] a[n] arrest warrant for Joseph Edward Dailey for the above offense.
[Italicized sentence was inserted by Judge and initialed by Detective Clark.]

*ed States v. Watts,* 176 U.S.App.D.C. 314, 318, 540 F.2d 1093, 1097 (1976)).

Of the several courts that have adapted *Franks* to a situation involving *omissions* from an affidavit, several have required the defendant to show that (1) "the police omitted facts with the intent" to mislead, "or in reckless disregard" of the known facts, and (2) "that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *United States v. Reivich,* 793 F.2d 957, 961 (8th Cir.1986); *see also Ogden v. District of Columbia,* 676 F.Supp. 324, 327 (D.D.C.1987) (allegations of omissions are to be read "as if the allegedly relevant material were included to determine whether probable cause would have been undetermined"); *United States v. Williams,* 737 F.2d 594, 604 (7th Cir. 1984) ("rationale of *Franks* applied to omissions"); *United States v. Martin,* 615 F.2d 318, 328 (5th Cir.1980) ("allegations of material omissions [are] to be treated essentially similarly to claims of material misstatements").

Although recognizing omissions as part of the *Franks* test, some courts have held that "[o]missions are not subject to the same high level of scrutiny as misstatements." *United States v. Rivera,* 750 F.Supp. 614, 617 (S.D.N.Y.1990). The court in *United States v. Colkley,* 899 F.2d 297, 301 (4th Cir.1990), explained that "the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory." [2] The court was concerned with the potential for "endless rounds of *Franks* hearings to contest facially sufficient warrants." [3] *Id.*

██ Even though the defendant convinces the judge that an evidentiary hearing is warranted, the defendant still may not prevail at that hearing. *Franks, supra,* 438 U.S. at 172, 98 S.Ct. at 2685. To challenge the affidavit successfully, the defendant must meet by a preponderance of the evidence, a four prong test: (1) the affidavit contained false statements, (2) the false statements were made knowingly and intentionally or with a reckless disregard for the truth,[4] (3) the false statements were

**2.** The court felt that the latter situation "potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit ... [and] severely disrupt the warrant process." *Colkley, supra,* 899 F.2d at 301, 303. The court also expressed doubts about the validity of inferring bad motive under *Franks* from the fact of omission alone because in the *Franks* test, "intentionality" and "materiality" are independently necessary. *Id.* at 301. Furthermore, that court stated that to be "material" under *Franks,* an omission must do more than potentially affect the probable cause determination: it must be " 'necessary to the finding of probable cause.' " *Id.* (quoting *Franks, supra,* 438 U.S. at 156, 98 S.Ct. at 2676).

The court further cautioned against importing the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), where the prosecutor has a duty to disclose exculpatory evidence to the defendant, into warrant application proceedings. *Colkley, supra,* 899 F.2d at 302. The court explained that the overriding concern of *Brady* is with the justice of finding guilt at trial and attaches regardless of the intent of the prosecutor, but *Franks,* by contrast, recognizes that the information an affiant reports from an informant may not ultimately be accurate, and such inaccuracies will be tolerated so long as the affiant did not deliberately mislead the magistrate. *Id.* at 303. The court

added that these disparate standards of intent "reflect differences in the consequences of error in the two contexts, and recognize that the non-lawyers who normally secure warrants in the heat of a criminal investigation should not be burdened with the same duty to assess and disclose information as a prosecutor who possesses a mature knowledge of the entire case." *Id.*

**3.** The court in *United States v. Davis,* 199 U.S.App.D.C. 95, 112, 617 F.2d 677, 694 (1979) agreed that officers cannot be required "to describe in minute detail all matters surrounding how they have obtained statements, for such a requirement would make the process of applying for a search warrant a cumbersome procedure inimical to effective law enforcement."

**4.** Because the Supreme Court in *Franks* gave no guidance concerning what constitutes reckless disregard for the truth in Fourth Amendment cases, the United States Court of Appeals for the District of Columbia Circuit, has drawn on precedents in the area of libel and the First Amendment, and applied a subjective test such that the affiant " 'in fact entertained serious doubts as to the truth' " of his affidavit or that there existed " 'obvious reasons to doubt the veracity of the informant or the accuracy of his reports.' " *Id.* (quoting *St. Amant v. Thompson,*

material to the issue of probable cause, and (4) without the false statements, the affidavit is insufficient to establish probable cause. *Franks, supra,* 438 U.S. at 155–56, 98 S.Ct. at 2676. If the defendant meets all four prongs, the warrant must be voided and its fruits suppressed. *Id.* at 156, 98 S.Ct. at 2676.

In *Richardson, supra,* 274 U.S.App.D.C. at 61, 861 F.2d at 294, the court held that even if the inaccurate statement in the affidavit was material to the issue of probable cause, the evidence should not be suppressed because of the *Leon* good faith exception,[5] *i.e.,* where the affidavit was made in good faith, the warrant was issued by a detached and neutral magistrate, and the warrant was reasonably relied on in good faith by the police officers. However, the court notes that the *Leon* good faith exception would logically not apply if the officer was found to have violated the second prong of the *Franks* test, *i.e.,* the officer was reckless. *Id.* at 61, n. 5, 861 F.2d at 294, n. 5 (citing *Leon, supra* note 5, 468 U.S. at 897, 104 S.Ct. at 3407). *See also Martin, supra,* 615 F.2d at 328–29.

### III.

■ Following the present judicial trend, this court deems the *Franks* test to include omissions from the affidavit. In adapting the language in *Franks* to apply sensibly to the omissions context: (1) during a preliminary inquiry, there must be allegations of deliberate deceit or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof by the defendant; and (2) if these requirements are met, and if the affidavit, supplemented with the omitted information would have defeated probable cause, the defendant is entitled to a *Franks* hearing. Whether the defendant prevails at the hearing is, still, as with falsified inclusions in the original, *Franks, supra,* 438 U.S. at 172, 98 S.Ct. at 2684, the subject of a second inquiry.

■ During the preliminary inquiry in the instant case to determine the necessity of a *Franks* evidentiary hearing, it is unclear whether appellant actually alleged deceit or reckless disregard for the truth, accompanied by an adequate offer of proof. In short, in order to establish his right to a *Franks* hearing, appellant was obliged to allege and offer proof that the police omitted the child's age either in a deliberate attempt to deceive the judge, or that the officer prepared the affidavit with reckless disregard for the truth. And, similarly, appellant also had to show that the inclusion of the child's age in the affidavit would defeat probable cause. Nevertheless, it does not appear that the trial judge focused on this preliminary inquiry before he, out of an abundance of caution, moved on to the second stage of the *Franks* test and conducted an extensive evidentiary hearing.

On appeal, appellant urges this court to adopt a unique application of the *Franks* test where the court would consider only what a reasonable *person* would have thought, not what the *officer* reasonably believed *in light of all the evidence* available to him or her. Appellant's strict objective test would circumvent the *Franks* good faith aspect of its test where "a challenge to a warrant's veracity must be permitted ... which surely takes the *affiant's* good faith as its premise." *Franks, supra,* 438 U.S. at 164, 98 S.Ct. at 2680 (emphasis added). His test would impose limitations on the trial court in its determination of the second prong of the *Franks* test, *i.e.,* whether there was "deliberate falsehood or reckless disregard for the truth" by the affiant. *Id.* at 171, 98 S.Ct. at 2684. Such a test is not supported by *Franks* nor the case law subsequent to *Franks* where the courts make a modified objective determination as to whether the officer's conduct is *reasonable under the circumstances.* Thus, we reject appellant's test, creative though it may be.

■ On the contrary, we agree, as in *Richardson, supra,* 274 U.S.App.D.C. at 60–61, 861 F.2d at 293–94, that the burden

---

390 U.S. 727, 731–32, 88 S.Ct. 1323, 1325–26, 20 L.Ed.2d 262 (1968)).

**5.** *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

is on the defendant to show that the affiant behaved in bad faith or in reckless disregard for the truth.[6] *Franks, supra,* 438 U.S. at 164–65, 98 S.Ct. at 2680–81. The defendant must first establish by a preponderance of the evidence that the officer intentionally tried to deceive the magistrate or acted with reckless disregard for the truth by including or omitting information from the affidavit. Accordingly, if the defendant does not meet this burden, then the trial court need not reach the materiality of the omission or inclusion of the information as to the issue of probable cause. That is, integral to the test is a good faith consideration as to whether the affiant, in the totality of the circumstances, tried to deceive the judge intentionally or manifested a reckless disregard for the truth.[7]

The trial court ruled, in the instant case, that the defendant "failed to establish by a preponderance of the evidence that the Detective in his affidavit in support of the arrest warrant acted with an intent to mislead the Court or with a reckless disregard for the truth so as to invalidate the warrant." In making this determination, the trial court considered several factors,[8] which taken together, "create[d] a reasonable basis upon which the Detective acted in seeking an arrest warrant for the Defendant."

The court found in this instance that the detective, in excluding the age of the child witness, was following his customary practice,[9] and had no intent to deceive the judge, and his interpretation of the information he had at that time was not made with reckless disregard for the truth.[10]

6. The court in *Richardson* faithfully adheres to the Supreme Court's purpose underlying the *Franks* test. *Richardson, supra,* 274 U.S.App. D.C. at 60–61, 861 F.2d at 293–94. The majority Court emphasized that the defendant must "show that the affiant was in bad faith." *Franks, supra,* 438 U.S. at 163, 98 S.Ct. at 2680 (quoting *Rugendorf v. United States,* 376 U.S. 528, 532, 84 S.Ct. 825, 828, 11 L.Ed.2d 887 (1964)).

7. In other words, the evidence should not be suppressed because of the *Leon* good faith exception, *i.e.* where the affidavit was made in good faith, the warrant was issued by a detached and neutral magistrate, and the warrant was reasonably relied on. in good faith by the police officers. *Richardson, supra,* 274 U.S.App. D.C. at 61, 861 F.2d at 294. The *Leon* good faith exception would not apply if the officer was reckless. *Id.* at 61, n. 5, 861 F.2d at 294 (citing *Leon, supra* note 5, 468 U.S. at 897, 104 S.Ct. at 3407). A "blatantly false affidavit" cannot survive a challenge on a mere claim of "good faith." *Id.* at 61, 861 F.2d at 294.

8. In addition to the information in the affidavit, the detective had knowledge of additional facts relevant to appellant's apparent involvement in this offense which included: (1) the two notebooks found in the apartment in which appellant's name and address appeared, and a note which could suggest that S.J.'s mother, J.J., did not like appellant; (2) the child's tape recorded interview where, even though she was obviously emotionally upset and had difficulty answering questions, she had been acquainted with appellant for about a year and kept repeating "Joe cut Mama;" (3) the child identified appellant from a photograph; (4) a trail of blood led out of the

apartment and continued in the direction of S.J.'s body; (5) information about appellant's returning home on the night of the stabbing with cuts on his hand; and (6) a witness' statement suggesting that a love triangle had created friction between S.J. and appellant.

9. It was Detective Clark's "usual practice in preparing affidavits in support of arrest warrants to omit information tending to identify a witness, such as name, age, relationship to the defendant or complainant so as to protect the identity of the witness." Even so, the court was "inclined to believe that it is preferable" to indicate in the affidavit (1) the age of a witness of tender years; (2) the relationship of that witness to the defendant; and (3) the capacity of that witness to identify someone.

10. The child had repeatedly stated that "Joe cut Mama" to all who would listen. The trial court, in its findings of fact, reasoned that

[b]ased on these facts and observations as well as the information the Detective had regarding the prior relationship of the Defendant to the child witness's mother, it was reasonable for the Detective to assume that ... the child by her statement [Joe cut Mama] meant that she saw the Defendant stab her mother at least on one occasion. [The judge's] assumption from what had been related in the affidavit with respect to the child's statement was, thus, similar to the assumption made by the Detective; namely, that the witness observed the stabbing, and ... the Judge's assumption underlies the reasonableness of the Detective's interpretation of the child's statements.

We conclude that, at this point, the trial court's determination was complete. As in *Richardson, supra,* 274 U.S.App.D.C. at 60–61, 861 F.2d at 293–94, the trial court's determination that appellant had not shown, by a preponderance of the evidence, that the officer had acted recklessly or in bad faith, ended the inquiry. We find no error in the trial court's ruling, and, accordingly, we hold that there was no error in the trial court's denial of the motion to suppress appellant's confession or the testimony of the eyewitness as illegal fruits of an invalid warrant affidavit. Although unnecessary to its analysis, the trial court, nevertheless, continued to the final prong of the *Franks* test, and ruled that under the totality of the circumstances, had the witness' age been included in the affidavit, the existence of probable cause would not have been undercut nor would the validity of the warrant have been vitiated. Because of our view of the required analysis, we need not reach the correctness of this inquiry.

We find no error in the trial judge's denial, after a hearing on the matter, of appellant's motion to suppress appellant's confession or the testimony of the prosecution's main witness.

*Affirmed.*